ERIC BALABAN
National Prison Project of
the ACLUF
915 15th Street, 7th Fl.
Washington, DC 20005
202.393.4930

ALEX RATE
ACLU of Montana
P.O. Box 9138
Missoula, MT
406.443.8590

AMY F. ROBERTSON
Civil Rights Education and
Enforcement Center
104 Broadway, Ste. 400
Denver, CO 80203
303.757.7901

**Attorneys for Plaintiffs**

COLLEEN E. AMBROSE
Chief Legal Counsel
Montana Department of
Corrections
P.O. Box 201301
Helena, MT 59620
406.444.4152

**Counsel for Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| IN THE MATTER OF LITIGATION RELATING TO CONDITIONS OF CONFINEMENT AT MONTANA STATE PRISON | Case No. CV 93-46-H-DWM-JCL |
|---|---|
| THIS DOCUMENT RELATES TO: Terry LANGFORD, *et al.,* Plaintiffs, v. Gov. Steve BULLOCK, *et al.*, Defendants. | **JOINT MOTION FOR FINAL APPROVAL OF REVISED CLASS ACTION SETTLEMENT** |

The parties hereby jointly move the Court for final approval of their Class

Action Settlement Agreement ("2018 Settlement"), a copy of which was attached

as Exhibit A to the Joint Submission of Revised Settlement Agreement.  Doc.
1542.  This Court granted preliminary approval of the 2018 Settlement on February
27, 2018.  Doc. 1543.  That Order required notice to be issued by March 9, 2018,
and set a deadline of May 8, 2018 for any objections.  *Id.*  Eighteen individuals
have asserted objections.  Doc. 1548.  This Court has set a Final Approval Hearing
for 10:00 a.m. on Friday, June 8, 2018.  Doc. 1545.

The detailed 2018 Settlement presented for this Court's approval achieves
substantial and lasting benefits for the certified class of Montana State Prison
inmates with disabilities.  These benefits represent an achievement substantially
equivalent to the prospective relief that the class could have achieved after the
substantial risks, delay, and expense that would have been associated with a trial,
appeals, and appellate stay motions.  The 2018 Settlement was developed with the
benefit of extensive discovery in the matter, and through lengthy, arms-length
negotiations.  The 2018 Settlement is fair, adequate and reasonable, and should be
approved.  Accordingly, the Parties seek an Order:  i) granting final approval of the
2018 Settlement entered into by the Parties; ii) approving the manner and forms of
giving notice of the settlement to the class members; and iii) ask the Court to sign
the form of judgment attached as Exhibit 9 to the Settlement Agreement.

## BACKGROUND

**I.     Litigation History and Procedural Status**

This action concerns conditions at the Montana State Prison ("MSP").  On

December 30, 1993, Plaintiffs filed their Fifth Amended Complaint containing,

among others, a claim under the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et seq*.  Doc. 23 at 26-27.  On January 14, 1994, the Court certified

the case as a class action,

> to consist of the above-named Plaintiffs and all other similarly
> situated Montana State Prison inmates currently housed at the Deer
> Lodge facility and the Warm Springs expansion unit or who may be
> housed there in the future.

Findings of Fact, Conclusions of Law and Order (Jan. 14, 1994) Doc. 22 at 5.

Following several months of negotiations, the parties entered into a Settlement

Agreement (the "1994 Settlement") resolving most of Plaintiffs' claims.  The

Court approved and entered the 1994 Agreement under Rule 23(e) of the Federal

Rules of Civil Procedure on November 29, 1994.  Doc. 367.

Over the next ten years, the parties stipulated to the dismissal of various

issues in the case on the basis of expert findings that Defendants were in sustained

compliance with provisions of the 1994 Settlement.  The sole remaining issue is

Defendants' compliance with Section 9 of the 1994 Settlement (the "ADA

Provision"), requiring Defendants to ensure that prisoners with disabilities are not

excluded from housing, services, facilities or programs, and are integrated into the mainstream of the institution.  1994 Agreement, Section 9, Doc. 314 at 21.

On June 29, 2012, this Court entered the parties' Unopposed Stipulation Regarding ADA Expert Appointment designating Paul Bishop "as the parties' expert to assess Defendants' compliance with the ADA provision (Section 9) of the Settlement Agreement."  Doc. 1477 at 1. The Court later appointed Raphael Frazier as the parties' joint ADA programmatic expert.  Doc. 1480.

Mr. Bishop and Mr. Frazier conducted a four-day site assessment at Montana State Prison ("MSP") during the week of September 17, 2012.  The experts reviewed programs, services, and activities offered in 32 MSP buildings, including housing units, vocational buildings, educational buildings, medical units, the gymnasium, and support buildings.  The experts also reviewed relevant MSP policies, training materials, architectural plans, orientation materials, ADA and grievances packets, and individual prisoner records, and they interviewed MSP staff and prisoners.

On May 25, 2013, Mr. Bishop and Mr. Frazier submitted their report finding that MSP's programs, as well as the facility, did not substantially comply with the ADA provision of the Agreement. Doc. 1489. They also made a number of recommendations for Defendants to implement that could result in their reaching substantial compliance.  *See id.*

Based on that report, on June 24, 2013, Plaintiffs moved for specific performance of the ADA provision.  Doc. 1493.  In their response, Defendants indicated that they were remedying a number of the violations that the experts had identified.  Doc. 1499 at 11-12; 19-25.  In light of this, the parties believed it would be productive to conduct direct negotiations to attempt to narrow the issues before the Court; accordingly, on September 3, 2013, Plaintiffs filed an unopposed motion to stay the litigation.  Doc. 1503.  On September 9, 2013, this Court denied Plaintiffs' motion for specific performance "subject to Plaintiffs' right to renew the motion if the parties are unable to reach a negotiated resolution of all issues that remain in dispute."  Doc. 1504 at 1-2.  The Court further ordered the parties to file a status report on or before November 12, 2013.  *Id.* at 2.

Starting on November 12, 2013, the parties requested and this Court granted a series of stays while the parties continued to discuss resolution of the remaining issues in this case.  Docs. 1505, 1507, 1510-13, 1519-20, 1525.  By order dated August 11, 2016, the Court granted a further stay to February 12, 2017, but stated that the Court would not grant any further extensions.  Doc. 1529.

On February 15, 2017, the parties filed a Status Report and Notification of Settlement, informing this Court that they had reached agreement on all remaining issues.  Doc. 1533.

This Court denied the parties' motion to approve the settlement, instructing the parties to further revise the agreement to provide for binding arbitration in the dispute resolution provision.  Doc. 1541. The parties conferred and amended the settlement to reflect this revision.  Doc. 1542.  This Court granted preliminary approval on February 27, 2018.

## II.    Legal Background

The ADA Provision of the 1994 Settlement requires:

> Defendants shall ensure that inmates with disabilities are not excluded from participation in, or denied the benefits of housing, services, facilities and programs because of their disabilities.  The Defendants shall develop and implement plans to integrate the disabled inmates into the mainstream of the institution.

1994 Settlement, Section 9; Doc. 314 at 21.  This language closely tracks the language of Title II of the Americans with Disabilities Act ("ADA"), which prohibits public entities such as the Montana Department of Corrections ("MDOC") from discriminating on the basis of disability:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities." *Id.*

§ 12102(1)(A).  "Major life activities" include both physical activities such as seeing, hearing, and walking, and mental activities such as learning, reading, thinking, and communicating.  *Id.* § 12102(2)(A).

Department of Justice ("DOJ") regulations implementing Title II further mandate that a "public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d), and that it make "reasonable accommodations" where necessary to avoid discrimination on the basis of disability, unless the entity can demonstrate that it would fundamentally alter the nature of the program, *id.* § 35.130(b)(7).  These regulations also require that newly constructed and altered facilities be "readily accessible to and usable by persons with disabilities," *id.* § 35.151(a) & (b); while existing, unaltered, facilities may not be required to be made accessible, the entity must operate each program so that, "when viewed in its entirety, [it] is readily accessible to and usable by individuals with disabilities," *id.* § 35.150(a), *see Pierce v. Cty. of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008). The DOJ promulgated Title II regulations that specifically apply to correctional facilities which make clear a public entity shall not, "because a [correctional] facility is inaccessible to or unusable by individuals with disabilities," exclude prisoners from participating in a program offered by the correctional facility.  28 C.F.R. § 35.152(b)(1).

The accessibility of new construction and alterations is evaluated against the Department of Justice Standards for Accessible Design ("DOJ Standards").  28 C.F.R. § 35.151(c).  These standards, first promulgated in 1991 and revised in 2010, *see id.* § 35.104, provide detailed design guidelines for all elements of covered facilities, for example, reach ranges, restroom dimensions, table height, and paths of travel.

**III.    Negotiations and Settlement**

Following the issuance of the expert reports, the parties began to meet regularly to discuss the remaining issues in dispute.  During these meetings, they addressed the list of over 800 barriers identified by Mr. Bishop and a wide range of policies addressing issues identified by Mr. Frazier.  The parties met regularly in Helena or at MSP, and communicated regularly by email and telephone, exchanging drafts and negotiating throughout the period from late 2013 to early 2017.  Decl. of Amy F. Robertson in Supp. of Joint Mot. for Final Approval of Revised Class Action Settlement ("Robertson Decl.") ¶ 3.  Class counsel visited MSP on seven occasions between mid-2013 and late 2016 to survey the facility, speak with MSP and MDOC staff, review documents and meet with prisoners with disabilities to learn about their experiences.  *Id.* ¶¶ 4, 6, 7, 8, 10, 14.  On February 15, 2017, the parties reached agreement on all remaining issues.  Doc. 1533.  In January, 2018, the parties met and conferred concerning proposed access to the

basketball court on the low-security side at MSP, and revised the settlement

agreement to reflect this new approach.  Doc. 1540.

## 1.  Architectural Barriers

Mr. Bishop's report identified approximately 862 physical plant elements at

MSP that were out of compliance with the DOJ Standards.  Doc. 1494-1.  Taking

that document as a starting point for negotiations, Defendants reported to Plaintiffs

that many of the features had already been brought into compliance.  Class

Counsel toured MSP in January, 2015, to confirm the measures Defendants had

taken and survey the remaining barriers.  Robertson Decl. ¶ 7.  This survey

provided the basis for ongoing negotiations -- during which Defendants continued

to remove barriers -- and three ensuing joint site visits to confirm these remedies

and discuss solutions.  *Id.*  The remaining barriers and agreed solutions are set

forth in Exhibit 1 to the 2018 Settlement.

## 2.  Policies, Procedures, and Training

The experts' reports identified a number of areas in which Defendants'

policies fell short of substantial compliance with Title II, including, for example,

its overall ADA policy; as well as policies addressing training, admissions,

reception and orientation, classification, searches, prisoner work assignments, and

communication with prisoners.  Doc. 1489-1, Ex. A at 4-8. Starting in the fall of

2014, Plaintiffs proposed changes to specific policies addressing these and other issues identified by the experts.

The parties quickly reached agreement on a number of basic issues related to the programmatic ADA violations Mr. Frazier had identified.  For example, the parties were able to reach agreement on revisions to policies and practices related to accommodations for prisoners in work programs, searches, count, library services, hobby crafts, and religious programming.  They continued to negotiate a number of more complex issues through early this year, resulting in new versions of over 30 policies, procedures, handbooks, and forms.  2018 Settlement ¶ III(B)(1), (2) and Exs. 2-8.  Finally, the parties agreed that policies addressing classification, locked housing, discipline, pre-hearing confinement, and behavior management plans would be amended with MDOC to provide draft amended polices within sixty days of final approval, and negotiate a set of agreed-on principles that these policies would effectuate.  *Id.* ¶ III(B)(3).

The 2018 Settlement also provides that Defendants will ensure that training for new employees and in-service training for existing employees is sufficient to permit them to implement the terms of the Settlement Agreement.  *Id.* ¶ III(C).

### 3.  Other Settlement Provisions

In addition to the provisions above addressing barriers, policies, and training, the 2018 Settlement calls for a two-year reporting and monitoring period,

*Id.* ¶ IV.  It contains a three-step dispute resolution procedure, requiring the parties to meet and confer and then submit their dispute to binding arbitration.  *Id.* ¶ V(A), (B).  The parties agreed to the appointment of Michael Brady as the neutral arbitrator, who is responsible for resolving all disputes between the parties regarding Defendants' compliance with the 2018 Settlement.  Mr. Brady has over three decades of experience as a correctional administrator and expert, and has served and currently serves as the court-appointed neutral expert in a number of federal cases addressing ADA compliance at correctional facilities. *See* Michael Brady's *curriculum vitae*, attached as Exhibit B to Joint Submission of Revised Settlement Agreement. Doc. 1542.  The Parties may seek relief from this Court only to enforce any decision of Mr. Brady with which a party refuses to comply. *Id.* ¶ V(C).  Pursuant to Paragraph VI, Defendants agree to pay Class Counsel's reasonable attorneys' fees and costs that have not previously been paid.

The 2018 Settlement releases all claims for injunctive relief, declaratory relief, and any attendant costs and attorneys' fees arising under the ADA.  *Id.* ¶ IX(B).  Because the operative complaint did not state a claim for damages, the 2018 Settlement does not release such claims.  *Id.* ¶ IX(C).

## 4.  Notice and Objections.

Pursuant to the 2018 Settlement and this Court's Order, on or before March 9, 2018, a copy of the notice attached as Exhibit 10 to the 2018 Settlement

("Notice") was distributed to each inmate at MSP, was posted throughout MSP in conspicuous locations in each housing unit, each library, each dining and common recreation area, the Work Reentry Center, the Montana State Correctional Treatment Center, and the Infirmary.  The Notice was provided to prisoners entering MSP during the notice period as part of their orientation process.  Copies of the Notice and the 2018 Settlement Agreement were available in all MSP libraries, as well as in the Legal Services office at MSP.  The Legal Services office staff and MSP library staff provided 84 copies of the 2018 Settlement Agreement to inmates upon request.  Finally, accessible versions of the Notice and the 2018 Settlement Agreement were posted on the website of the MDOC.  Decl. of Interim Warden Jim Salmonsen in Supp. of Joint Mot. for Final Approval of Revised Class Action Settlement ("Salmonsen Decl.") ¶¶ 3-8.

Eighteen individuals filed timely objections.  Doc. 1548.  These will be addressed below.

## ARGUMENT

### I.    The Proposed Settlement Should Be Approved.

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement that would bind a certified class.  Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998),

"[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

The Ninth Circuit has instructed district courts to consider and balance multiple factors when assessing the fairness of the settlement of a case. These factors may include:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon* factors," numbers added for ease of discussion below).  These factors are non-exclusive, and courts may disregard those factors not relevant to a particular case.  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 n.7 (9th Cir. 2004).  However, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026 (citation omitted).

The parties respectfully submit that the fourth factor, the amount offered in settlement, is not relevant here, where the settlement is injunctive only.

**A. The Strength of the Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; the Risk of Maintaining Class Action Status Throughout the Trial; and the Extent of Discovery Completed and the Stage of the Proceedings all Favor Final Approval.**

When analyzing the fairness of a settlement, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal citation omitted). The case was at an ideal juncture for settlement. While the 1994 Settlement gave the plaintiff class the enforceable rights embodied in the ADA Provision, that provision was worded in such general terms -- indeed, it is similar to the basic anti-discrimination language of the statute itself, *see supra* -- that the ability of the class to secure the specific, excellent results of the 2018 Settlement via enforcement of the 1994 Agreement was hardly assured.

The 2018 Settlement achieves outstanding results and ensures Defendants' compliance with the ADA in ways and at a pace the 1994 Settlement never did. It is comprehensive, addressing all of the ADA violations identified by the Court's experts Mr. Bishop and Mr. Frazier and those violations Plaintiffs identified during

the negotiations and discovery leading up to settlement.  The Agreement also is specific, identifying every physical plant barrier needing remediation, and revising the specific polices that cover all programs, services, and activities available to MSP prisoners.  It also revises the prison's program for identifying, tracking, and accommodating prisoners with disabilities, ensuring that they are not discriminated against at the outset, and that any discrimination they may suffer is quickly identified and remedied through a viable and responsive grievance and appeal process.  The 2018 Agreement includes a powerful and complete dispute resolution process administered by Mr. Brady, a highly experienced correctional administrator and expert who has done this exact work in other ADA cases around the country.   Mr. Brady's involvement will ensure that any issues of non-compliance that the parties themselves fail to resolve will be resolved quickly.

It would have been extremely costly and time consuming to present the evidence necessary to establish a right to each type of relief provided in the 2018 Settlement had the parties been unable to settle.  Continued litigation to trial, even if Plaintiffs had prevailed, would unquestionably delay the implementation of the relief Plaintiffs have secured via this Settlement.  Had Plaintiffs prevailed at trial, any remedy that would have been ordered would have been subject to further delay via an appeal and a stay pending resolution of the appeal.  While Plaintiffs were

confident that they would have maintained class certification throughout the trial, the passage of time likely would have required adding representative plaintiffs.

Here, the court's role is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Taken as a whole, and in consideration of the uncertainties of trial, Plaintiffs have secured excellent results.

The parties had extensive discovery and information concerning the barriers and policies at MSP, and had met repeatedly to inspect and discuss them. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526. Here there is no question that both parties fully understood the legal and factual issues, and entered the 2018 Settlement on that basis.

Thus the first, second, third, and fifth *Hanlon* factors favor approval of the 2018 Settlement.

### B. The Experience and Views of Counsel and the Presence of a Governmental Participant Favor Final Approval.

The Ninth Circuit has held that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). When class counsel is experienced and supports the settlement, and the agreement was reached after arm's length negotiations, courts should give a presumption of fairness to the settlement. *See Nobles v. MBNA Corp.*, No. C 06-3723, 2009 WL 1854965, at * 2 (N.D. Cal. June 29, 2009); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Here, the parties are represented by counsel with years of experience with prison, disability rights, and class action litigation (on the Plaintiffs' side) and the law and policy applicable to corrections facilities (on the Defendants' side). Counsel for all parties believe that the 2018 Settlement is fair, adequate, and reasonable and recommend approval, so this factor favors final approval. Decl. of Eric Balaban in Supp. of Joint Mot. for Final Approval of Revised Class Action Settlement ("Balaban Decl.") ¶ 2; Decl. of Alex Rate in Supp. of Joint Mot. for Final Approval of Revised Class Action Settlement ("Rate Decl.") ¶ 5; Robertson Decl. ¶ 18; Decl. of Colleen E. Ambrose in Supp. of Joint Mot. for Final Approval of Revised Class Action Settlement ("Ambrose Decl.") ¶

10. The fact that Defendants are government officials and entities and endorse the

settlement likewise favors final approval.

### C. The Reaction of the Class Members to the Proposed Settlement Favors Final Approval.

"Courts have taken the position that one indication of the fairness of a

settlement is the lack of or small number of objections."  4 Newberg on Class

Actions § 11.48 (4th ed. 2008); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D.

at 529 ("[T]he absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class settlement

action are favorable to the class members").   The Plaintiff class here is defined to

include "similarly situated Montana State Prison inmates."  Doc. 22 at 5.  MSP

houses approximately 1,640 prisoners, Salmonsen Decl. ¶ 9; only 18 objections

were received, Doc. 1548.

The objections can be divided into three categories:  those that address the

merits of the 2018 Settlement itself; those that complain of issues that should be

addressed within the framework of the 2018 Settlement should it be approved; and

those entirely outside the scope of the 2018 Settlement.

### 1.    Objections Going to the Merits of the 2018 Settlement

The only set of objections that directly address the merits of the 2018

Settlement are those that complain about the monitoring provision.  Owen Evans

objects that the monitoring period should be ten years instead of the two-year period provided in the 2018 Settlement. Doc. 1548 at 4. Jeremy Woods objects that the monitoring process in the 2018 Settlement does not provide sufficient protection, and proposes that a neutral third party be appointed to act as monitor to review complaints and visit the facility to verify compliance. *Id.* at 16-17. Jeffory LaField makes a similar request. *Id.* at 58-59. John Gazda requests that a federal arbitrator be appointed to oversee reasonable accommodation requests. *Id.* at 9.

The 2018 Settlement provides for a two-year implementation and reporting period which starts after required training has been completed and the policies referred to in Paragraph III(B)(3) have been drafted and approved. 2018 Settlement ¶ IV(A). The Agreement further provides that Class Counsel and their experts -- as well as Mr. Brady -- "shall have reasonable access, with reasonable advance notice, to the institutions, Employees, contractors, prisoners, and documents necessary to properly evaluate whether Defendants are complying with the provisions of this Paragraph and other provisions of this Agreement." *Id.* ¶ IV(B). The Arbitrator, Class Counsel and their experts are also guaranteed access to information necessary to perform this monitoring function. *Id.*

During this two-year period, which will likely commence sometime in 2019, Class Counsel will be attentive to monitoring the implementation of both the policy and architectural provisions of the 2018 Settlement, including reaching out

to class members, surveying the facility, and requesting necessary information.
The Parties respectfully submit that this provision is sufficient to ensure
compliance.

The only other objection that ostensibly addresses substance misreads the
2018 Settlement.  Mr. Owen Evans objects to a "substantial compliance" standard.
Doc. 1548 at 3-4.   While this was the standard set forth in the 1994 Settlement, it
is not applicable in the 2018 Settlement.

## 2.    Objections alleging violations of the ADA that are addressed in the 2018 Settlement

A number of objectors raised issues that are addressed in the 2018
Settlement and which should thus be resolved within the framework of that
agreement should this Court grant final approval.  For example, Mr. LaField, Mr.
Gazda, and Chester Bauer all raise issues of physical access that are addressed in
the 2018 Settlement, including the barrier removal commitments set forth in
Exhibit A and the amended inspection and maintenance policy, MSP Operational
Procedure 2.1.1 "MSP Maintenance." Doc. 1548 at 9, 11, 56-57, *see* 2018
Agreement, Ex. 2.  Should these problems persist following final approval and
implementation, these class members will have access to the dispute resolution
procedure set forth in Paragraph V of the 2018 Settlement.

A number of objectors raised issues relating to accommodations that are also
addressed in the 2018 Settlement and the policies it incorporates by reference.

Thomas Sliwinski complained that accommodations were denied and Mr. LaField and Mr. Gazda complain that the ADA coordinator is unresponsive. Doc. 1548 at 8-9, 12-13, 57-58. This is addressed in Policy DOC 3.3.15, ADA Offender Accommodations.[1] Dale Shrock complained that he was denied accommodations relating to his work assignment. Doc. 1548 at 28. This is addressed in Policy DOC 3.3.15, as well as Paragraph III(E)(6) of MSP Operational Procedure 5.1.102, "Inmate Participation in a Long Term Work Program." Mr. Woods, Ronald Looman, and Michael Allard complained that their mental illnesses and/or developmental disabilities were not accommodated. Doc. 1548 at 15-17, 19, 30-34. This is addressed in general in DOC 3.3.15, and will be the subject of the policies to be revised in accordance with the guidelines agreed to in Paragraph III(B)(3) of the 2018 Settlement.

A number of objectors complained of inadequate medical or mental health care. Doc. 1548 at 1-2, 11, 15-16, 19, 29-34, 57-58, 63, 67. If the denial of such care rises to the level of discrimination based on disability or denial of an accommodation, it is addressed by, for example, DOC 3.3.15. To the extent that such objections challenge the adequacy of care, they are not covered by the ADA. See, e.g., Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010)

_____

[1] The policies and procedures addressed in the 2018 Settlement are listed in Exhibit 2 to that Settlement.

("The ADA prohibits discrimination because of disability, not inadequate treatment for disability.").

### 3.    Objections that go beyond the scope of the 2018 Settlement

A number of objections addressed issues that are outside the scope of the 2018 Settlement.

Several objectors requested that the settlement address conditions at other facilities.  Doc. 1548 at 3, 53, 57-59.  This case was originally filed to address conditions at MSP and the 1994 Settlement only addresses that facility.  Because the 2018 Settlement resolves disputes arising out of the 1994 Settlement, its scope is similarly limited.  The release in the 2018 Settlement only covers claims at MSP, so prisoners with claims relating to other facilities may pursue them separately.

Similarly, objections that the 2018 Settlement should have involved a damages remedy, *id.* at 59, are beyond the scope of the 1994 Settlement.  Again, however, the 2018 Settlement is clear that it does not release claims for damages and prisoners may pursue such claims individually.

Several objectors complain of errors in their conviction, sentencing, habeas petition or parole, Doc. 1548 at 23-26, 64-65, which issues are, again, beyond the scope of the original complaint in this case and the 1994 Settlement, and thus the 2018 Settlement.  Objections relating to black mold, *id.* at 11, property handling,

*id.* at 51-52, and the inability to file complaints against specific officers, *id.* at 33, are similarly not issues falling within the purview of the ADA.

Finally, Mr. Woods objected that the 2018 Settlement did not address architectural barriers for able-bodied people. *Id.* at 14-15.  The ADA only protects individuals with disabilities, 42 U.S.C. § 12132, so it does not cover the barriers of which Mr. Woods complains.

## CONCLUSION

For the reasons above, the Parties respectfully request that this Court:

1.      Grant final approval to the 2018 Settlement; and

2.      Enter judgment substantially in the form of Exhibit 9 to the 2018

Settlement.


Respectfully submitted this 25th day of May, 2018,

*/s/ Alex Rate*
Alex Rate
ACLU of Montana
P.O. Box 9138
Missoula, MT
406.443.8590

*/s/ Eric G. Balaban*
Eric G. Balaban, *pro hac vice*
National Prison Project of the ACLUF
915 15th Street, 7th Fl.
Washington, DC 20005
202.393.4930

*/s/ Amy F. Robertson*
Amy F. Robertson, *pro hac vice*
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
303.757.7901

**Attorneys for Plaintiffs**

*/s/ Colleen E. Ambrose*
Colleen E. Ambrose
Chief Legal Counsel
Montana Dep't of Corrections
P.O. Box 201301
Helena, MT 59620-1301
406.444.4152

**Attorney for Defendants**